[Crim. No. 3328.   First Dist., Div. One.   Dec. 23, 1958.]

THE PEOPLE, Respondent, v. JACK STANPHILL, Appellant.

Edward Nelson, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, and Victor Griffith, Deputy Attorney General, for Respondent.

WOOD (Fred B.), J.—Convicted of first degree robbery, committed while armed with a deadly weapon, and of conspiracy to commit robbery, with three prior convictions (one in Oklahoma in 1947 and two in California in 1951)*, defendant was found by the trial court to be "a habitual criminal." Defendant questions this finding.

In respect to the Oklahoma conviction, the indictment charged that this defendant was convicted of the "crime of burglary, second degree . . . , a felony," that judgment thereon was rendered "on or about the 4th day of September, 1947," and that he "served a term of imprisonment therefor in the State Prison." Defendant admitted "as true the prior conviction of Felony of the date of September 4, 1947, as charged. . . ."

However, it does not appear from the charge itself, nor from defendant's admission thereof, whether he was convicted of a crime which is specified by section 644 of the Penal Code as one which is used as a basis for determining that a person is "a habitual criminal." The Oklahoma statute includes in its definition of second degree burglary the doing of certain acts which would not constitute such an offense in California under our statutes.

For example, Oklahoma defines second degree burglary as breaking and entering "any . . . automobile, truck, trailer . . ." (21 Okl.St.Ann. § 1435.) These are broader terms than those appearing in section 459 of our Penal Code, which uses the expression "vehicle as defined by" our Vehicle Code if "the doors of such vehicle are locked."

There is the possibility, also, that defendant may have been convicted under an earlier Oklahoma statute for an offense which would not qualify as burglary under our statute. Until their repeal in 1941, sections 1433 and 1434 of title 21 of the Oklahoma statutes defined certain entries as second degree burglary if made "with intent to commit any crime," not limited to "intent to commit grand or petit larceny or any felony" as in our section 459. (See 21 Okl.St.Ann. (1937) §§ 1433-1434, repealed by Laws, 1941, p. 87, § 2.)

The repeal of sections 1433-1434 did not preclude subsequent prosecution for a violation thereof. The Oklahoma constitu-

---

*The two California priors were tried together. Only one qualifies as a prior conviction "upon charges separately brought and tried," under Penal Code, section 644.

Those convictions were for attempted robbery and for violation of section 245 of the Penal Code, for each of which defendant was sentenced to and served a term of imprisonment in the state prison.

tion provided and still provides that the repeal of a statute does not affect "any accrued right, or penalty incurred, or proceedings begun by virtue of such repealed statute." (Okl. St.Ann.Const. art. 5, § 54.) The applicable statute of limitations would be tolled during defendant's absence, if any, from the State of Oklahoma. (22 Okl.St., § 153.)

Consequently, it is possible that defendant may have been convicted in 1947 of an entry made prior to 1941 under circumstances that would not constitute burglary under our law.

Accordingly, proof of the nature of the Oklahoma offense and, possibly, the date of its commission, would be necessary to a determination that defendant is "a habitual criminal" under our statute.

The record herein indicates that such proof was tendered in this case by means of certain documents which the district attorney presented to the trial judge. They consisted of certified photostatic copies of informations and commitment papers, guilty pleas of the defendant to those charges, and his commitment to the Oklahoma state penitentiary; also, a letter from the county attorney of Tulsa County, Oklahoma, to the district attorney of San Francisco outlining the details of the Oklahoma crimes. From these documents it would appear that each of the Oklahoma burglaries would have been a burglary under section 459 if committed in California. The entry in each case was for the purpose of stealing "certain personal property of value." That, at least, was a charge of an entry for the purpose of committing petit larceny.

However, these documents were not authenticated in the manner prescribed by section 1905, Code of Civil Procedure, nor by production of the originals as sanctioned by *People* v. *Wilson*, 100 Cal.App. 397, 400 [280 P. 137], nor by authenticated copies of the judgments and testimony identifying the defendant (*People* v. *Wilson*, 103 Cal.App. 420, 423-424 [284 P. 988]), nor in the manner provided by section 969, subdivision b, Penal Code. The plaintiff argues that section 969, subdivision b, has been satisfied, because the documents include a copy of the warden's receipt. The receipt is not a certification.

Moreover, the documents were merely presented to the trial judge by the district attorney at the time of sentencing. There is no indication in the record that defendant was at any time given an opportunity to question the correctness or legal competence of the authentication of the documents mentioned. Such an opportunity should have been afforded him.

Plaintiff says that because defendant admitted the Oklahoma priors as charged, there was no place during the trial where the admission of these documents in evidence would have been pertinent; indeed, their admission would have been prejudicially erroneous, citing Penal Code, sections 1025 and 1093.* Accordingly, says plaintiff "what else could the trial judge do but accept the documents as he did in this case, inspect them to make sure the defendant was convicted of a crime which if committed in California would have been burglary under the laws of . . . California." That is not the production of evidence nor is it confrontation of the defendant with the purported "evidence" tendered, upon an issue of pivotal importance in the case. The habitual criminal, under the circumstances of this case, would be sentenced to imprisonment for life. (Pen. Code, § 644.) *People* v. *Morton*, 41 Cal.2d 536, 541-545 [261 P.2d 523], demonstrates that here we are not dealing with some trivial, inconsequential detail of procedure; instead, it is a matter of such great import, a formal adjudication is required.

In such a case the established procedure is to reverse the judgment in part and remand for retrial of issues limited to those which pertain to the question whether or not defendant is a habitual criminal. (*People* v. *Taylor*, 155 Cal.App.2d 26 [317 P.2d 167]; hearing by Supreme Court denied.)

We note in passing that if the retrial results in a determination that defendant is a habitual criminal and a life sentence is imposed, all other terms should run concurrently with the life term, not consecutively as heretofore adjudged herein. (Pen. Code, § 669; *People* v. *Tucker*, 127 Cal.App.2d 436, 437 [273 P.2d 934].)

The part of the judgment adjudging defendant a habitual criminal and imposing sentence is reversed and the cause is remanded with directions to resentence defendant after the conclusion of the limited new trial on the issue of the challenged prior conviction.

Peters, P. J., and Bray, J., concurred.

---

*Such evidence is not to be presented to the jury but only to the judge at or prior to the time of fixing sentence.